IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RYAN YOUNG, individually and on behalf of those similarly situated,

Plaintiff,

No. 2:11-cv-02491-KJM-JFM

vs.

MATTHEW CATE, in his capacity as the Secretary of the California Department of Corrections and Rehabilitation,

ORDER

Defendant.

___________________________________/

The court heard argument on plaintiff Ryan Young's motion for an order granting preliminary approval of a proposed FLSA class on January 31, 2012. (ECF 45.) Gregory Alumit appeared for plaintiff; David King and Jennifer Garten appeared for defendant. For the following reasons, the court GRANTS in part and DENIES in part plaintiff's motion for conditional certification.

I. ALLEGED FACTS AND PROCEDURAL BACKGROUND

Plaintiff, a corrections officer at Mule Creek State Prison, claims that the California Department of Corrections and Rehabilitation's ("CDCR") policy to request time off illegally requires him and other putative class members to work without being paid. (FAC

¶¶ 1-3, 13-15.) Plaintiff alleges that all adult CDCR facilities in the state of California utilize this same policy, which requires that Holiday Time Off ("HTO") request forms be submitted exactly thirty days prior to the holiday requested and exactly thirty minutes prior to the start of the shift on the day the request is submitted. (*Id.* ¶¶ 13-15.) Plaintiff alleges this policy also requires correctional officers to wear their uniforms as they submit their HTO forms. (*Id.* ¶ 14.) Moreover, upon arriving at work to submit HTO forms, plaintiff alleges corrections officers are often asked to perform tasks before their assigned work time begins. (*Id.*) Officers are not paid for this additional time worked. (*Id.* ¶ 15.)

Plaintiff seeks to certify a class of all those who "are employed by [California] in a variety of correctional peace officer classifications and work at the various prisons, institutions, and offices run by the [CDCR]." (*Id.* ¶ 10.) Plaintiff claims these correctional officers' responsibilities include "feeding inmates, escort duties within the institutions, supervising inmates 24-hours-per-day, parole agent services, correctional firefighting, and inmate medical and counseling services." (*Id.* ¶ 11.) While plaintiff alleges CDCR operates thirty-three adult facilities and seven juvenile detention centers, plaintiff lists approximately thirty-nine facilities throughout California where putative class members are alleged to work. (*Id.*) The putative class consists of more than 10,000 members. (*Id.* ¶ 9.)

Plaintiff filed his original complaint on September 20, 2011. (ECF 1.) This court granted defendant's motion to dismiss (ECF 8) on November 29, 2011 on sovereign immunity grounds, concomitantly granting plaintiff leave to amend to seek prospective declaratory relief only. (ECF 16.) Plaintiff filed his amended complaint on December 27, 2011. (ECF 17.) Following two extensions of the pre-certification discovery deadline, plaintiff moved to conditionally certify this class on December 7, 2012. (ECF 45.) Defendant filed an opposition on January 17, 2013 (ECF 48), and plaintiff filed a reply on January 24 (ECF 56).

/////

/////

II. LEGAL STANDARD

Plaintiff seeks conditional certification for a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. Under the FLSA, an employer must pay a non-exempt employee at a rate not less than time-and-a-half his or her regular rate of pay if the employee works more than forty hours in one week. 29 U.S.C. § 207(a)(1); *Troy v. Kehe Food Distribs., Inc*., 276 F.R.D. 642, 647 (W.D. Wash. 2011). An employee may pursue an FLSA action to recover unpaid overtime wages and may bring the action "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216; *Troy*, 276 F.R.D. at 649.

Most courts use a two-step approach to certification of a FLSA collective action. First, the court undertakes an initial inquiry, based primarily on the pleadings and any affidavits submitted by the parties, to determine whether plaintiff is similarly situated to the proposed class so that notice may be sent to the potential class members. *Troy*, 276 F.R.D. at 649; *Leuthold v. Destination Am.*, 224 F.R.D. 462, 466-67 (N.D. Cal. 2004). At this first stage, "the Court requires little more than substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy, or plan." *Troy*, 276 F.R.D. at 649 (internal quotation marks, citations omitted). Second, after class members have opted in, the court employs a stricter standard in determining whether a collective action is warranted and whether the ultimate settlement is fair. *Knipsel v. Chrysler Grp., LLC*, No. 11-11886, 2012 WL 553722, at *1 (E.D. Mich. Feb. 21, 2012); *Khait v. Whirlpool Corp*., No. 06-6381 (ALC), 2010 WL 2025106, at *7 (E.D.N.Y. Jan. 20, 2010).

III. ANALYSIS

Plaintiff supports his claim of an illegal statewide policy with copies of employee policies from several correctional facilities and twelve declarations from plaintiff and some of his co-workers at Mule Creek. (Exs. A-O, Pl.'s Mot. for Conditional Certification, ECF 45.) Arguing the declarations are sufficient to meet the first step of the certification burden, plaintiff

cites to *Tolentino v. C & J Spec-Rent Servs. Inc.*, 716 F. Supp. 2d 642 (S.D. Tex. 2010) and *Aguayo v. Oldenkamp Trucking*, No. 04-6279, 2005 WL 2436477 (E.D. Cal. Oct. 3, 2005). (Pl.'s Reply 4, ECF 56.) Plaintiff additionally argues that the only proper inquiry at this point is whether the proposed class is subject to a single policy. (ECF 45 at 4; ECF 56 at 2-4.) Plaintiff urges that conditional certification will aid in efficient resolution of the many potential claims involving the CDCR policies he says are widely-applied. (ECF 56 at 5.) Assuming the class is certified, plaintiff also seeks to protect the broad scope of the proposed class. (*Id.* at 5-7.) Plaintiff stresses that the exact duties performed by the various employees are relatively unimportant in determining whether they were similarly situated because the complaint regards holiday time and not performance of duties. (*Id.* at 4.)

Defendant argues that the applicable CDCR employee policy manuals do not set forth the policies plaintiff claims they do, and that there is no common policy on HTO to which the proposed class is subject. (Def.'s Opp'n at 6-10, ECF 48.) Defendant cites to *Valesquez v. HSBC Finance Corp.*, 266 F.R.D. 424 (N.D. Cal. 2010) and *Hinojos v. Home Depot*, 2:06-CV-00108, 2006 WL 3712944 (D. Nev. Dec. 1, 2006) for the proposition that plaintiff's declarations are insufficient given the scope of the class. (*Id.* at 10-11.) Defendant also argues there is no nexus linking the members of the proposed class, even if there were a common policy. (*Id.* at 13-15.) Lastly, defendant objects to the scope of the class, as well as the definition of the class and the proposed notice methods if the class is certified. (*Id.* at 15-20.)

A. Authentication of Exhibits

Initially, the court addresses *sua sponte* its concerns regarding the authenticity of plaintiff's exhibits containing copies of correctional facilities' employee policies, which are not accompanied by a declaration identifying the exhibits and swearing to their validity. However, the Bates stamps and headings included for the majority of the policies permit the court to

authenticate them under Federal Rule of Evidence 901(b)(4).[1] *Las Vegas Sands v. Nehme*, 632 F.3d 526, 532-33 (9th Cir. 2011). In the case of two documents, however, attached to plaintiff's brief as Exhibit C, pages 1 to 3 and 11, no information permits the court to determine what the documents are. (Ex. C, ECF 45-4.) Consequently, these two documents will not be considered in ruling on this motion.

B. Evidence of a Single Policy for a Statewide Class

On the record before the court, plaintiff has not shown the existence of a single policy that requires putative class members state-wide to submit HTO requests outside the hours of their scheduled shifts. The admissible policies generally fail to substantiate plaintiff's allegations of a single policy requiring work without pay. (Exs. A-C, ECF 45.) The CDCR operations manual does establish a general statewide rule, though subject to amendment by Custody Captains,[2] that requests for HTO must be submitted no later than thirty days before the requested time off. (Ex. A, ECF 45-2.) Additionally, some of the localized operational procedures require that requests for HTO be submitted no earlier than thirty days before the requested time off. (Ex. C.) Plaintiff reads these two rules together to assert that corrections officers are required to submit HTO requests exactly thirty days prior to the requested time off.[3]

However, the critical element of the alleged policy is not the date on which the HTO requests must be submitted, but the time, prior to a shift. The fact that an employee must come in earlier the day the HTO form is submitted, whichever day that happens to be, is the feature of the policy that results in time worked without pay; the particular day on which that

---

[1] This rule states in relevant part that a document can be authenticated by "[t]he appearance, contents, substances, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." FED. R. EVID. 901(b)(4).

[2] Nothing in the record defines the "Custody Captain" position.

[3] The assertion that correctional officers in the potential class are required to submit HTO requests exactly thirty days prior to the desired day off strains credulity: the Ironwood and Sacramento facilities' policies on their face permit officers to submit requests up to three months in advance. (Ex. C at 6, 15.)

occurs is immaterial to the claim. None of the operational procedures in the record requires submission prior to the start of an employee's shift; instead, those procedures bearing on the topic simply permit submission prior to the start of the shift. At Ironwood State Prison, the permitted time range for submission ranges from three months and one hour prior to twenty-four hours prior to the start of the shift requested. (*Id.* at 5.)[4] At Richard J. Donovan Correctional Facility at Rock Mountain, employees may not be paid for making submissions outside of work hours and may not be paid when late to their shifts as a result of submissions, but the policy does not say they may not submit HTO requests while performing their shift duties. (*Id.* at 12.) At California State Prison - Sacramento, employees are permitted to submit their HTO requests at any time within three months prior to the requested time off, although there are specified earliest times for the first day on which requests are accepted. (*Id.* at 14.)

The Mule Creek officers' declarations, however sparse, do establish the existence of an informal policy requiring work without pay. The declarations state that officers must come in prior to their shifts to submit the form, during which time they must follow instructions from supervisors. (Exs. E-O ¶¶ 3-4, ECF 45-5.) At this stage of litigation, these declarations satisfy the basic requirement of class certification, presenting evidence that the employees are subject to a single policy that requires "work" without pay.

The Mule Creek declarations, submitted by officers at a single correctional facility, are not sufficient to establish that potential class members state-wide are subject to the same informal policy. *Tolentino*, 716 F. Supp. 2d 642, and *Aguayo*, 2005 WL 2436477, do suggest that one or two declarations may satisfy the low burden of proof required at the first step of the certification test. However, the critical difference between those cases and the present case is the scope of the knowledge the declarants may reasonably be expected to have. In

---

[4] The Ironwood policies state that time-off requests are granted on a first-come, first-served basis. (Ex. C at 6.) This suggests a policy to ensure requests are made in an orderly manner, and that officers may arrive before their shift to submit HTO requests, to increase the probability their requests are submitted first, not that officers must arrive before their shift.

*Tolentino,* the defendant, a company providing services to the oil and gas industry, disputed extension of the proposed class to employees with other jobs working on the same job site, a situation where "it was very common for each operator to perform the functions of another operator, depending on the job and availability of employees." 716 F. Supp. 2d at 651 (citations omitted). In *Aguayo*, the plaintiff sought to define the class as employees of a single trucking company who traveled the same routes as Aguayo and operated out of the same terminals. 2005 WL 2436477, at *4, *rendered moot by settlement*, CVF046279AWILJO, 2006 WL 845876, at *1 (E.D. Cal. Mar. 31, 2006). In noting that the burden of showing the other employees were similarly situated was satisfied, the assigned magistrate judge found "[a] reasonable inference from the evidence submitted is that Aguayo, as an employee of defendant, would learn, during the normal course of his employment, how the employer operates, where the employer operates, what other similar employees are doing, and where they are doing there [sic] jobs." *Id.*

*Hinojos*, relied on by defendant, illustrates why the reasonable inference drawn in *Tolentino* and *Aquayo* is not supportable here, even given twelve declarations. In *Hinojos*, plaintiffs submitted ten declarations from present or former Home Depot employees who worked at locations near Las Vegas. 2006 WL 3712944, at *1. Plaintiffs asked the court to "conclude that a national policy exists based on limited assertions pertaining to a few stores." *Id.* at *2. Based on the limited knowledge of the declarants regarding other locations and the inability of the plaintiffs to identify a policy encompassing the entire class, the court concluded the plaintiffs had not met their burden. *Id.*; *see also Velasquez v. HSBC Finance Corp.*, 266 F.R.D. 424 (N.D. Cal. 2010).

Here, the essential problem facing plaintiff is not simply one of size, but the number of the facilities and the individualized policies of those facilities submitted by defendants. It can be reasonably assumed that the workers in *Tolentino* were aware of their co-workers' situations and that Aguayo learned about the work schedules of his fellow truck drivers at shared terminals. However, the officers at a single correctional facility cannot be

presumed to have knowledge of the policies at dozens of facilities across the state, without more evidence than plaintiff provides here. The policy manuals submitted by plaintiff alone demonstrate a diversity of policies, sufficient to show that no one policy on HTO controls the proposed class. (Exs. A-C.) The diversity of the policies is confirmed by defendant's submissions. (Ex. GG, ECF 52.) Even if uniform policy language did cover all the facilities, plaintiff concedes it is not the language of the policy but its implementation that is objectionable. (ECF 56 at 4.) The same concerns regarding limited personal knowledge of the declarants and lack of an overarching policy that compelled denial of conditional certification in *Hinojos* require the same result here.

Plaintiff has had ample opportunity to gather evidence to meet his burden at step one of conditional certification. Because plaintiff has not provided sufficient evidence of a single policy to which correctional officers statewide are subject, the court denies plaintiff's motion to certify his proposed statewide class.

C. The Revised Class

Plaintiff has provided sufficient evidence demonstrating that correctional officers at Mule Creek State Prison are subject to a single unwritten policy, which requires they submit HTO requests, in uniform, at least thirty minutes prior to their shift. (Exs. E-O ¶¶ 3-4.) Therefore, plaintiff has met his burden with respect to a class of rank-and-file correctional officers currently employed at Mule Creek State Prison. The court will conditionally certify this narrower class. *See Tolentino*, 716 F. Supp. 2d at 652 (conditionally certifying a narrower class for which plaintiff's evidence was sufficient).

/////

/////

/////

/////

/////

IV. CONCLUSION

For the foregoing reasons, the court orders the following:

1. Plaintiff's motion for conditional certification of a state-wide collective action is GRANTED in part insofar as the court conditionally certifies a collective action under the FLSA for a class of rank-and-file correctional officers currently employed at Mule Creek State Prison;

2. Plaintiff's motion is otherwise DENIED;

3. The parties shall meet and confer to prepare joint notice and opt-in forms. In drafting these documents, the parties shall adhere to the governing legal requirements;

4. The parties also shall meet and confer on the method of distributing the notice to the members of the class;

5. The parties shall submit to the court for approval the joint notice and opt-in form, as well as a description of the method of distribution of these documents, as directed above, by March 2, 2013. Any separate proposals or objections either party may have with respect to these documents shall also be filed by that date; and

6. No notice or opt-in form shall be sent to the conditionally-certified class members until this court has approved the form, content, and method of notice.

IT IS SO ORDERED.

DATED: February 21, 2013.

UNITED STATES DISTRICT JUDGE